### Coann and others v. Atlanta Cotton Factory Co.[*]

*(Circuit Court, N. D. Georgia.　September, 1882.)*

TRUST DEED—EQUITY RULES 47, 48—ABSENT PARTIES.

　The Atlanta Cotton Factory Company made a deed of certain property, real and personal, in trust, to certain trustees, to secure to its bondholders the payment of their bonds and interest, with power to take and sell the property in case the company should make default in payment of the interest coupons, and such default should continue for one month, and said trustees should have notice thereof. Subsequently, but at a time when no coupon was due, one of the bondholders brought this suit for himself, and for all parties in interest who might join him, alleging the insolvency of the company, its inability to meet its debts and expenses, and its being about to default in the payment of interest, and had a receiver appointed. Afterwards, several, but not all, of the bondholders, among them one of the trustees, joined the complainant, and, before any default in the payment of interest, a decree was entered ordering a sale, which was had, and the property was purchased by one of the bondholders. The remaining trustees then appeared, and asked to have the sale set aside on the ground of the inadequacy of the price, and that the decree be vacated to enable them, as representing all the first-mortgage bondholders, to be made parties. *Held*— (1) That the relief prayed for must be granted. (2) That the equity rules that allow suits to be brought by some complainants for the benefit of all, expressly reserve the rights of absent parties. Equity Rules 47 and 48. (3) The absent bondholders are not *quasi* parties, as they would have been had the trustees been parties to the suit, and are not bound by the decree. *Campbell* v. *Railroad Co.* 1 Woods, 377. (4) The purchaser at the sale made, who is also a bondholder and party, takes no full title to what the decree purports to sell. (5) The remedy then given by the decree is not full and complete, even as to the parties before the court, and the litigation is not ended.

*Hopkins, Abbott & Thompson,* for complainants.
*Bleakley, Webb & Davis, contra.*

PARDEE, C. J.　On the fifteenth of August, 1878, the defendant executed and delivered to Freeman Clarke, Henry B. Plant, and Vincent R. Tommy, a deed of certain property in Atlanta, Georgia, both real and personal, *in trust,* for the purpose of securing to the holders of the first-mortgage bonds of said company payment of the sum of

---

*Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

$150,000 on October 1, 1883, together with interest thereon at the rate of 10 per cent. per annum, payable quarterly, on the first days of January, April, July, and October, in each year, at the City Bank, New York. It was provided in said deed that if the defendant should fail to pay the interest coupons, or any of them, or the bonds, or any of them, as they became due, and *such default should continue for one month,* such trustees, *when* notified *of such failure,* and *that it has continued for one month,* were authorized to take control of the property and to sell the same as therein provided.

On the twenty-fifth of March, 1881, the plaintiff E. T. Coann, as sole complainant, filed his bill, alleging the making of the deed of trust, that he was a holder of 37 first-mortgage bonds of defendant, and that he brought this action on behalf of himself and of the first-mortgage bondholders who might join in the same. Coann further alleged that the defendant was insolvent, and could not pay its debts, as well as running expenses, and the wages of its employes, and that the factory would close, and the employes would scatter, and that it was about to default in the payment of interest due April 1st thereafter. He prayed for the appointment of a receiver, and that *when default occurred in the payment of the interest on the bonds* the deed might be foreclosed and the property sold to pay the first mortgage. Thereupon, by order made and entered March 25, 1881, the court appointed Hon. Rufus B. Bullock as receiver of the property, with directions to carry on the business, collect dues, and *out of the proceeds* pay operatives and other proper expenses, and, further, to make report of his proceedings every rule day.

On April 21, 1881, a petition was filed by the Saco Water-power Company, and on the thirtieth of April, 1881, a petition was filed by the Lewiston Machine Company, asking that the petitioners be made parties complainant to the suit. Each of those petitioners reserved the right to move for another person than Rufus B. Bullock to be made receiver of the defendant's property. On September 27, 1881, a petition was filed by A. V. Clarke, Freeman Clarke, and others, asking to be made parties complainant, who united in the charges and prayers of the bill. A special allegation was as follows: "Said Freeman Clarke is one of the trustees named in the mortgage, and is the holder and owner of 18 of said first-mortgage bonds," etc. On the same day an order was entered in conformity with the petition.

December 10, 1881, an order was entered upon the petition of the receiver, directing him to make and issue negotiable paper for such cotton and supplies as he may find necessary to purchase in carrying

on business, * * * and for money to make such purchases. Final decree was entered in the action March 28, 1882, under which a sale was made by the commissioners therein named on the sixth of July, 1882, and Lemuel Coffin purchased the trust estate for $101,-000, that being the highest sum bid for the property.

By reference to the decree it will be noticed that the trustees, the holders of the legal title of the property, were not made parties to the foreclosure suit, and that only $122,000 of the first-mortgage bondholders appear on the record. By the affidavits of the two surviving trustees it appears that not only were they not made parties, but they were never requested to take any steps looking to a foreclosure of the property, nor were they ever notified that there was default in the payment of the interest coupons, nor that the interest had remained unpaid for the period of one month.

Freeman Clarke's affidavit shows that he understood the pending proceedings were being carried on, not for the purpose of foreclosure, but for the sole purpose of appointing and continuing Mr. Bullock as receiver. Messrs. Freeman Clarke, E. T. Coann, and A. V. Clarke say they did not know, until after the decree was entered, that a foreclosure suit was in progress. The interest on their first-mortgage bonds was paid up to the first of April, 1882, and the decree herein was entered on the twenty-eighth day of March, 1882, prior to any default upon their large amount of coupons.

No proof appears to have been taken in the cause, and the decree was entered by consent on the twenty-eighth of March, 1882. Apart from the statements in the decree, there is no evidence that any of the coupons were at that time unpaid. Mr. A. V. Clarke and others made arrangements to protect their interests at the sale, but withdrew from these arrangements on learning that the trustees had not been made parties to the foreclosure suit, and that the trustees claimed that the sale would be invalid by reason of their not having been joined as parties. Freeman Clarke refused to join in any effort to bid upon the property, and notified the other first-mortgage bondholders that, in his opinion, the sale of the property in a suit to which the trustees were not parties, would be irregular and void. This position of Mr. Freeman Clarke as a trustee, arising out of a failure to join the trustees as parties, created confusion and uncertainty among the bondholders, and led to the failure of many of them to act in concert for the protection of their rights.

The affidavits of the plaintiffs Coann and A. V. Clarke show that they were both ignorant of the fact that this action was a foreclosure

suit until after the decree of foreclosure was granted. When they were informed of the decree of foreclosure they were advised by counsel that there was doubt about the validity of the title to the mortgaged premises, as the trustees were not made parties, and as some of the bondholders were not parties.

The affidavits of Zephaniah Clarke and C. C. Cornell show that they are holders and owners of first-mortgage bonds of the defendant, and have not been made parties to the suit, and that they knew nothing about these proceedings until after the sale herein; the interest on their bonds having been regularly paid to April 1, 1882.

Mr. Warner's affidavit is much to the same effect, showing his ignorance of a foreclosure suit until after the granting of the decree, and that he took such steps as he could to protect the interests of his clients, the brothers Landauer, who were not made parties to the suit, but that owing to the fact that the title under the sale was questionable, and that the amount of receiver's certificates were unascertained, the bondholders did not make a bid.

Mr. Webb's affidavit shows that the purchasers, on the sale of July 6th, purchased with notice of trustees' rights and claims in the matter; that a large number of the first-mortgage bondholders were not parties to the proceedings; and that, as he is informed and believes, there was no default in the payment of the interest on the bonds.

The mortgaged premises were sold July 6, 1882, for $101,000, to Samuel H. Coffin, who is one of the firm of Coffin, Altemus & Co., which firm holds first-mortgage bonds to a large extent, and are complainants in suit, and also own the entire issue of $100,000 of second-mortgage bonds. W. E. McCoy values the mortgaged property at $200,000; William C. Langley values it at at least $150,000.

The case comes up at this time on a motion by Freeman Clarke and Henry B. Plant, surviving trustees, made at the term of court at which the decree of sale was rendered, asking that the sale made be set aside for inadequate price, and that the consent decree rendered be vacated to allow them, as representing all the first-mortgage bondholders, to be made parties to allege and prove default in the payment of the interest due on the bonds, and to obtain a decree of foreclosure that will bind and protect all the parties interested in the first-mortgage bonds or the trust estate. A consideration of the entire case satisfies me that this motion should be granted. To reach this conclusion it is not necessary to determine that the proceedings had in the case have been irregular and void.

It may well be that all the persons who have made themselves parties, or who have come in since the sale asking for payment of their bonds, are bound by the decree. And yet it may be said that a close inspection of the pleadings and proceedings had in the case shows that the original bill, giving it its fullest scope, is not one for foreclosure; that it shows no grounds looking to a foreclosure, except the allegation that the mortgagor is going to default; that in only one application of a bondholder to be allowed to join the complainant is there any allegation that there had been default in paying the interest; that only the original bill was notice to the defendant who made no appearance; that the decree *pro confesso* entered against the defendant goes only to the allegations of the original bill; and that there is no proof in the case by confession or otherwise, except affidavit offered on this hearing, that there had been any default or breach of contract that would warrant a decree of foreclosure. Nor is it necessary to determine whether or not all the bondholders, or else the trustees to represent them, must be made parties in order to obtain a valid foreclosure of a trust deed. The law of Georgia which controls the effect of the trust deed which is the foundation of this case, to the effect that "a mortgage is only security for a debt and passes no title," may well make it a vexed question in this state as to how far it may be necessary for trustees of a trust mortgage to be made parties in the foreclosure of the mortgage granted by the trust deed. It is clear that the bondholders who have not been made parties are not bound by the decree.

The equity rules that allow suits to be brought by some complainants for the benefit of all, expressly reserve the rights of absent parties. See Equity Rules 47 and 48. The absent bondholders are not *quasi* parties, as they would have been had the trustees been made parties to the suit. See *Campbell* v. *Railroad Co.* 1 Woods, 377, 378. It follows that, as the absent bondholders are not bound by the decree, they may inaugurate new proceedings, involving a foreclosure and a review of what has been done. The parties who have joined in this case, but who now insist that the trustees shall be joined, are also in a position to keep the case before the court. The purchaser at the sale made, who is also a bondholder and party, takes no full title to what the decree purports to sell. The remedy, then, given by the decree in this case is not full and complete, even as to the parties before the court, and the litigation is not ended.

The proposition is to open the case, (the proceedings still being *in fieri,*) to allow proper parties to be made, so as to grant full relief and

settle the rights of all parties interested. It also seems clear from the evidence that the apprehensions of some of the bondholders, and their proceedings at the sale, have thrown such a cloud upon the title to be given under the decree rendered as to justify the finding that the price offered at the sale is inadequate. The affidavits filed go to this extent. On this point nothing is left, then, for the court to do but refuse to confirm the sale and set the same aside. That being done, there are no good reasons against, and many good reasons in favor of, vacating the decree to allow new parties to be made, a proper case proved, and a new decree to be rendered, that will do full equity to all parties and end the litigation in the premises. No damage can result but by delay, and no great delay can result, as a new decree can be rendered at this term and the property at once offered for sale. In vacating the decree and allowing new parties to be made, the court can and will make such terms as will result in speeding the cause and procuring a speedy sale of the property.